**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-mj-8431-SMM**

FILED BY_____ **MB** ____D.C.

**Jun 11, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTP

**IN RE SEALED COMPLAINT**

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?_No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By:   _/s/ Vitaliy Kats_____

VITALIY KATS
Assistant United States Attorney
FL Bar 118748
500 South Australian Ave, Suite 400
West Palm Beach, Florida
Tel: (561) 209-1069
Email: vitaliy.kats@usdoj.gov



AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

#### Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| CURTIS DUNCAN JR., | )  Case No.  26-mj-8431-SMM |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

FILED BY ___ **MB** ___ D.C.

**Jun 11, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 2026 _____ in the county of _____ Palm Beach _____ in the

_____ Southern _____ District of _____ Florida _____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 U.S.C. § 841(a)(1) | Distribution of a controlled substance |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Eric Blanco, ATF
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: __ June 11, 2026 __

_____
*Judge's signature*

City and state: _____ Fort Pierce, FL _____

Hon. Shaniek Mills Maynard, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Eric Blanco, being duly sworn, depose, and state the following:

## AGENT BACKGROUND AND INTRODUCTION

1. I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since December 2021. I am currently assigned to ATF Miami Field Division Group V– HIDTA South. My duties and responsibilities include the investigation of violations of federal laws related to the criminal misuse of firearms, firearms trafficking, violent crimes (including armed robberies), possession of firearms in furtherance of violent crimes, and drug trafficking offenses. I have completed a 12-week Criminal Investigator Training Program, and a 14-week ATF Special Agent Basic Training Academy taught at the Federal Law Enforcement Training Center located in Glynco, Georgia. Thus, I am a "federal law enforcement officer," as defined by Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I make this Affidavit for the limited purpose of establishing probable cause for a criminal complaint charging that on or about May 6, 2026; May 14, 2026; May 20, 2026; and May 27, 2026, Curtis DUNCAN Jr. distributed a controlled substance—crack cocaine—in violation of Title 21, United States Code, Section 841(a)(1).

2. The facts set forth in this Affidavit are based on my personal knowledge and my review of records, documents, and other evidence obtained during this investigation, as well as information conveyed to me by other law enforcement officials and private persons. This Affidavit is submitted for the sole purpose of establishing probable cause and does not include every fact known to me about this matter.

## PROBABLE CAUSE

### May 6, 2026 Sale of Crack Cocaine and Fleek Sample

3.      On or about May 6, 2026, an undercover agent (hereinafter referred to as UC), acting in an undercover capacity and accompanied by a confidential informant (hereinafter referred to as CI) conducted a controlled purchase of a half-ounce of crack cocaine. This was a prearranged transaction with Curtis DUNCAN Jr. to provide the aforementioned quantity of crack cocaine. The CI arranged this transaction through the use of cellular communication with DUNCAN on cellular number ***-***-8094. This transaction occurred outside of a residence in Riviera Beach, Florida within Palm Beach County and the Southern District of Florida.

4.      On this same date, law enforcement personnel from ATF briefed at a predetermined meeting location for the purpose of conducting an undercover controlled purchase of crack cocaine from DUNCAN. UC was equipped with recording equipment to capture the transaction. UC was also provided with ATF agent cashier funds to complete the purchase. UC searched CI before and after the transaction for contraband with negative findings.

5.      UC was in a car equipped with audio and video recording equipment which captured the interaction between UC, CI, and DUNCAN. At approximately 1737 hours, UC and CI arrived at a residence in Riviera Beach, Florida. It should be noted this is DUNCAN's residence. DUNCAN approached the undercover vehicle (UCV) and when the UC requested the half-ounce of crack cocaine, DUNCAN stated he did not have it ready. DUNCAN then advised he would call the CI when he had the crack cocaine ready to sell. DUNCAN also stated he would give UC a couple sample bags of "fleek." UC knows the term "fleek" to be slang for Alpha-PVP, a synthetic cathinone. DUNCAN stated that UC and CI could return to his residence to conduct the transaction.

2

UC and CI left the area and returned to a predetermined staging area to wait for DUNCAN's call. The electronic surveillance equipment was terminated at 1742 hours.

6.      At approximately 1834 hours, UC reactivated all electronic surveillance equipment. It should be noted that DUNCAN contacted CI via cell phone and stated he would be ready in fifteen minutes. UC and CI traveled back to DUNCAN's residence.

7.      Upon arrival, UC observed a gray Nissan Altima sedan parked on the street in front of DUNCAN's residence. A short time later, DUNCAN exited the residence and entered the front passenger seat of the Nissan sedan. UC observed the vehicle leaving the area and traveling in the direction of Avenue U. A short time later, UC observed DUNCAN walking from the direction of Avenue U towards the UCV. DUNCAN went into his residence momentarily and returned to the UCV. DUNCAN then entered the rear passenger seat of the UCV.

8.      Once inside, DUNCAN placed a scale on the armrest and weighed a half-ounce of suspected crack cocaine. UC observed 14.2 grams on the digital scale. UC then handed DUNCAN $500.00 in ATF agent cashier funds for a half-ounce of crack cocaine. DUNCAN stated the price was $500.00 because his nephew "Po-Boy" vouched for the UC and CI. DUNCAN then advised he was going to his residence to get UC a sample of "fleek" (Alpha-PVP). DUNCAN exited the UCV and entered his residence. Shortly after, DUNCAN returned to the UCV and handed over two (2) plastic baggies containing suspected "fleek" to UC. UC and CI later left the area and returned to the predetermined meeting location.

9.      The suspected crack cocaine sold by DUNCAN was field tested and yielded a positive result for the presumptive presence of cocaine base. It weighed approximately 14.1 grams. The suspected Alpha-PVP weighed approximately 0.5 grams (including packaging). The crack

cocaine and suspected Alpha-PVP were processed and submitted to the Drug Enforcement Administration Lab for testing.

## May 14, 2026 Sale of Crack Cocaine

10.     On or about May 14, 2026, UC, acting in an undercover capacity and accompanied by CI, conducted a controlled purchase of one ounce of crack cocaine. This was a prearranged transaction with Curtis DUNCAN Jr. to provide the aforementioned quantity of crack cocaine. The CI arranged this transaction through the use of cellular communication with DUNCAN on cellular number ***-***-8094. This transaction occurred outside of a residence in Riviera Beach, Florida within Palm Beach County and the Southern District of Florida.

11.     On this same date, law enforcement personnel from ATF briefed at a predetermined meeting location for the purpose of conducting an undercover controlled purchase of crack cocaine from DUNCAN. UC was equipped with recording equipment to capture the transaction. UC was also provided with ATF agent cashier funds to complete the purchase. UC searched CI before and after the transaction for contraband with negative findings.

12.     UC was in a UCV equipped with audio and video recording equipment which captured the interaction between UC, CI, and DUNCAN. At approximately 1330 hours, UC and CI arrived at the same residence in Riviera Beach, Florida where they had met with DUNCAN previously. A call was placed to DUNCAN to advise that UC had arrived. A short time later, DUNCAN arrived in a black Nissan SUV. DUNCAN was then observed exiting the passenger seat and walked over to the UCV. DUNCAN then entered the rear passenger seat of the UCV.

13.     Once inside the UCV, DUNCAN stated he was away from his house because his aunt found some crack rocks in the house and was mad. DUNCAN stated he had to move his product to another location. UC later observed DUNCAN remove a clear plastic bag containing the

4

suspected crack cocaine from his front left pocket. DUNCAN then removed a digital scale from his other pocket and placed it on the rear seat. DUNCAN placed the suspected crack cocaine on the scale and showed the UC that the weight of the crack was correct. UC asked what the price for the crack would be, and DUNCAN stated, "That's a band man." The term "band" in this context is known to law enforcement as one thousand dollars in United States currency. UC then handed DUNCAN $1000.00 in ATF agent cashier funds for the crack cocaine.

14.     Prior to leaving, DUNCAN stated he only sold ounces to 4–5 people and sold crack rocks to everyone else. DUNCAN offered to sell UC one ounce of crack and front a second ounce. DUNCAN told the UC, "Y'all buy one, Imma throw ya one. Just bring the money back." DUNCAN then asked UC to drop him off at the store. UC left the residence and travelled to George's Food Market located on 1241 Avenue U. DUNCAN then exited the UCV and entered the passenger seat of the Nissan SUV. UC and CI exited the area and returned to the predetermined meeting location. The electronic surveillance equipment was terminated at approximately 1341 hours.

15.     The suspected crack cocaine sold by DUNCAN was field tested and yielded a positive result for the presumptive presence of cocaine base. It weighed approximately 29.2 grams, including packaging. The crack cocaine was processed and submitted to the Drug Enforcement Administration Lab for testing.

### May 20, 2026 Sale of Crack Cocaine

16.     On or about May 20, 2026, UC, acting in an undercover capacity and accompanied by CI, conducted a controlled purchase of one ounce of crack cocaine. This was a prearranged transaction with Curtis DUNCAN Jr. to provide the aforementioned quantity of crack cocaine. The CI arranged this transaction through the use of cellular communication with DUNCAN on cellular

number \*\*\*-\*\*\*-8094. This transaction occurred outside of a residence in Riviera Beach, Florida within Palm Beach County and the Southern District of Florida.

17.     On this same date, law enforcement personnel from ATF briefed at a predetermined meeting location for the purpose of conducting an undercover controlled purchase of crack cocaine from DUNCAN. UC was equipped with recording equipment to capture the transaction. UC was also provided with ATF agent cashier funds to complete the purchase. UC searched CI before and after the transaction for contraband with negative findings.

18.     UC was in a UCV equipped with audio and video recording equipment which captured the interaction between UC, CI, and DUNCAN. At approximately 1339 hours, UC and CI arrived at the same residence in Riviera Beach, Florida where they had met with DUNCAN previously. A call was placed to DUNCAN to advise that UC had arrived. A short time later, DUNCAN arrived in a black Nissan SUV. DUNCAN was then observed exiting the passenger seat and walked over to the UCV. DUNCAN then entered the rear passenger seat of the UCV.

19.     Once inside the UCV, DUNCAN advised UC that he only had one (1) ounce for sale that day. It should be noted that UC and CI had arranged to purchase two (2) ounces from DUNCAN. DUNCAN claimed he was unable to prepare the two (2) ounces of crack cocaine. DUNCAN then removed a plastic bag which contained the suspected crack cocaine from his front left pocket. DUNCAN then removed a digital scale from his front right pocket and weighed the crack cocaine on the armrest of the UCV. UC observed the crack cocaine to weigh approximately 26.8 grams without packaging. UC then handed DUNCAN $1000.00 in ATF agent cashier funds for the crack cocaine.

20.     Prior to leaving, DUNCAN advised the UC and CI to call him 72 hours in advance to order the crack cocaine. DUNCAN stated he would then have time to prepare the crack and put

6

it to the side. DUNCAN said to the UC, "Y'all buying one, I'm throwing you one." DUNCAN then exited the UCV and entered the Nissan SUV. UC and CI left the area and returned to the predetermined meeting location.

21.     The suspected crack cocaine sold by DUNCAN was field tested and yielded a positive result for the presumptive presence of cocaine base. It weighed approximately 27.6 grams, including packaging. The crack cocaine was processed and submitted to the Drug Enforcement Administration Lab for testing.

### May 27, 2026 Sale of Crack Cocaine

22.     On or about May 27, 2026, UC, acting in an undercover capacity and accompanied by CI, conducted a controlled purchase of one ounce of crack cocaine. This was a prearranged transaction with Curtis DUNCAN Jr. to provide the aforementioned quantity of crack cocaine. The CI arranged this transaction through the use of cellular communication with DUNCAN on cellular number ***-***-8094. This transaction occurred outside of a residence in Riviera Beach, Florida within Palm Beach County and the Southern District of Florida.

23.     On this same date, law enforcement personnel from ATF briefed at a predetermined meeting location for the purpose of conducting an undercover controlled purchase of crack cocaine from DUNCAN. UC was equipped with recording equipment to capture the transaction. UC was also provided with ATF agent cashier funds to complete the purchase. UC searched CI prior before and after the transaction for contraband with negative findings.

24.     UC was in a UCV equipped with audio and video recording equipment which captured the interaction between UC, CI, and DUNCAN. At approximately 1631 hours, UC and CI arrived at the same residence in Riviera Beach, Florida where they had met with DUNCAN previously. A call was placed to DUNCAN to advise that UC had arrived. A short time later,

7



DUNCAN arrived operating a white Honda sedan. DUNCAN parked behind the UCV, exited his vehicle, and entered the rear passenger seat of the UCV. DUNCAN was observed carrying a gray hand towel and a digital scale in his hand.

25.     Inside the UCV, DUNCAN stated that his supplier had left, so he was unable to provide the UC with the additional ounce of crack cocaine. DUNCAN then removed a plastic bag with the suspected crack cocaine from a gray hand towel he had in his hand. DUNCAN then placed the digital scale on the center console and weighed the crack cocaine without the plastic bag. UC observed that the crack was approximately one (1) gram short of one ounce. DUNCAN then removed a small piece of crack from his pocket and broke it in half. DUNCAN placed the broken piece of crack on the scale to make up the one (1) gram. The UC observed the scale to read 27.8 grams. UC then handed DUNCAN $1000.00 in ATF agent cashier funds for the crack cocaine. DUNCAN assured he would have an additional ounce of crack cocaine on the next transaction. Shortly after, DUNCAN exited the UCV and returned to the Honda sedan. UC and CI then left the area and returned to the predetermined meeting location. The UC terminated the electronic surveillance equipment at approximately 1631 hours.

26.     The suspected crack cocaine sold by DUNCAN was field tested and yielded a positive result for the presumptive presence of cocaine base. It weighed approximately 28.0 grams, including packaging. The crack cocaine was processed and submitted to the Drug Enforcement Administration Lab for testing.

8

## CONCLUSION

27.     I respectfully submit that there is probable cause to believe that on about May 6, 2026, May 14, 2026, May 20, 2026, and May 27, 2026, Curtis DUNCAN Jr. distributed a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Eric Blanco, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by
FaceTime, on this  11th  day of June 2026, at
Fort Pierce, Florida

HON. SHANIEK MILLS MAYNARD
UNITED STATES MAGISTRATE JUDGE

9